**WIBYE v. UNITED STATES (two cases).**
Nos. 27732, 27694.

United States District Court
N. D. California, S. D.
Dec. 22, 1949.

Nichols, Richard, Allard & Williams, Oakland, Cal., for plaintiffs.

Frank J. Hennessy, United States Attorney, San Francisco, Cal., for defendant.

GOODMAN, District Judge.

In these two consolidated actions for damages for personal injuries brought under the Federal Tort Claims Act, 60 Stat. 843, 28 U.S.C.A. 931 et seq. [now 1346, 2671 et seq.], the liability of the United States depends upon whether John E. Hadley, a civilian employee of the Stock Control Division of the United States Quartermaster Corps, was acting "within the scope of his office or employment," at the time the government automobile he was driving struck that of the plaintiffs.

### The Facts

The evidence at the trial was substantially as follows:

Hadley's duties required him to travel up and down the west coast of the United States, visiting various Quartermaster Depots and performing certain work there. His traveling was done in a government automobile. His work schedule for November 1946 was introduced in evidence, from which it appeared that it was his duty to proceed from Seattle, Washington, to the Stockton Quartermaster Depot, located at Lathrop, near Stockton, in the San Joaquin Valley, California. The schedule also called for certain days to be spent by him at Lathrop. It also provided for a travel period, upon completion of his assignment at Lathrop, en route back to Fort Lewis, Washington, near Seattle, at which place he was scheduled to arrive on November 11th.

On the night of Thursday November 7, Hadley telephoned from Lathrop to his mother, Mrs. Edna Fipps, who lived in San Francisco, and informed her that he would leave Lathrop on Friday and drive to San Francisco for the purpose of having dinner with her Friday evening, on his way back to Fort Lewis, and also for the purpose, incidentally, of cashing some checks. On Friday afternoon, while en route from Lathrop to San Francisco over highway #50, at a point near Dublin, in the County of Alameda, Hadley's car careened over onto the wrong side of the road and crashed into the automobile in which the plaintiffs were riding at the time. Hadley was instantly killed and plaintiffs each

suffered severe and permanent injuries. That plaintiffs' injuries were caused by the negligence of Hadley is undisputed.

The distance from Lathrop, California, to Fort Lewis, Washington, is approximately 900 miles. At the time of the accident, Hadley had only proceeded a short distance on the long trip ahead of him. The coast route through San Francisco, which he elected to take, is approximately 60 miles farther than the inland route from Lathrop through Sacramento, California to Seattle.

### Discussion.

■ Under California law, proof of car ownership gives rise to the inference that an employee of the owner, in possession of the owner's car, is on the business of the owner. Plaintiffs contend that this inference amounts to prima facie proof that Hadley was acting within the scope of his employment by the United States at the time of the accident.[1] We may pass this question inasmuch as other admissible evidence establishes liability.

■ Hadley's mother was called as a government witness and her hearsay testimony as to the telephone conversation with her son was elicited during her examination. Both plaintiffs and the government have advantaged themselves of the testimony, hearsay though it was, each interpreting it favorably to their or its cause and neither side raised any question as to its admissibility. Because of the importance of this testimony in determining whether Hadley's trip to San Francisco was the first leg of his journey back to Seattle or a distinctly personal side trip, we have conducted independent research and are satisfied that the telephone conversation is admissible. This is so because it falls within a well-recognized exception to the hearsay rule, namely, the so-called "state of mind exception." The rationale of this exception is that a person's own statement of a presently existing state of mind, made in a natural and unsuspicious manner, is proper evidence with respect to a design or intent to perform a specific act. It is clear that Hadley's statement to his mother was a completely unrehearsed and spontaneous announcement of his plan, intent and purpose of returning to Fort Lewis, Washington, via San Francisco. His mother's testimony as to such statement was therefore admissible. Mutual Life Insurance Company v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. See, also, note 113 A.L. R. 268; 3 Wigmore on Evidence, 2nd Ed. Section 1725, page 696.

■ The prime legal issue which the Court is required to resolve is whether, in proceeding from Lathrop to Fort Lewis, Washington, there was such a deviation from the route of return to Fort Lewis as would take Hadley outside the scope of his employment and put him on his own business rather than that of the government. As to this, it is sufficient to say that no specific travel route was prescribed by the government for Hadley to follow. It is evident from the nature of the itinerary that the choice of routes was his own. It was only required that after finishing his labors at Lathrop, Hadley was to report to Fort Lewis, Washington, not later than a date fixed. After leaving Lathrop, Hadley was pursuing a route which would take him to Fort Lewis without the necessity of retracing any of the distance covered or of even returning to the so-called

1. In Murphey v. U. S., 79 F.Supp. 925, Judge Lemmon of this Court held the California inference to be pertinent in an action under the Tort Claims Act. The judgment in that case was reversed by the Court of Appeals on January 25, 1950, 9 Cir., 179 F.2d 743, but on other grounds. The U. S. Court of Appeals of the Fifth Circuit in Hubsch v. U. S., 174 F.2d 7, held a comparable inference under Florida law to be insufficient proof of liability of the United States under the Act, but the Supreme Court granted certiorari in the case on Oct. 10, 1949, 70 S.Ct. 44, and on Dec. 19, 1949, 70 S.Ct. 225, before argument, remanded the cause to the District Court for the purpose of approving or disapproving a compromise settlement pursuant to § 2677 of Title 28 U.S.C.A. Thus the question posed has not been determined by the Supreme Court.

inland route, via Sacramento, to Fort Lewis. Therefore, the fair and just conclusion is that, after leaving Lathrop, Hadley was simultaneously upon the government's business and satisfying his own desire to visit his mother in San Francisco on the way.

Decisions of the California Courts, which, our research reveals, are not untypical of the law generally, clearly indicate that where a deviation from the main travel route is slight and merely involves a choice of routes, it is not sufficient to take an employee out of the scope of his employment. The rule appears to be that "where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master." Ryan v. Farrell, 1929, 208 Cal. 200, 280 P. 945, 946. See also, Westberg v. Willde, 1939, 14 Cal.2d 360, 94 P.2d 590; Cain v. Marquez, 1939, 31 Cal.App.2d 430, 88 P.2d 200; Kruse v. White Brothers, 1927, 81 Cal.App. 86, 253 P. 178; Dennis v. Miller Automobile Company, 1925, 73 Cal.App. 293, 238 P. 739; Montgomery v. Hutchins, 9 Cir., 1941, 118 F.2d 661. I hold that Hadley was within the scope of his employment at the time of the accident.

## Damages

Harold Wibye. As a result of the accident, plaintiff Harold Wibye suffered a cerebral concussion resulting in loss of vision in his left eye and severe headaches, wrenching of the neck and upper back, with post traumatic parascapular myositis bilaterally, and other lacerations, abrasions and nervous shock. As the evidence showed, he was unable to follow any occupation for the 141 weeks between the accident and the trial. Medical testimony was that he would need further hospitalization for treatment of his neck and that further repairs to his knee, which had been severely lacerated, were required. The medical proof further showed that the injuries are of a permanent nature and that Harold Wibye will never be fit to follow his occupation. He was 40 years of age, and a superintendent of building construction, earning approximately $125.00 per week at the time of the accident. Lost earnings amount to some $17,625.00 and medical and hospital expenses were approximately $2,160.00. After taking into account the nature of the injuries, the age of this plaintiff, his reasonable life expectancy, his lost earnings and medical expenses and the present value of his future loss of earnings, I have concluded that a proper award would be the sum of $45,000.00.

Niels K. Wibye. Niels K. Wibye suffered more severe injuries than his brother. He also had a cerebral concussion and in addition a fracture of both hips and his right knee, resulting in considerable limitation of motion thereof. In addition, he suffered injury of the tendons of the right wrist and other deep and painful lacerations. He was confined to the hospital for many months, where he underwent surgery in an attempt to repair the fractures of the hips and knee. His injuries are permanent in character. At the time of the accident, he was 41 years of age, and was a carpenter foreman, earning approximately $100.00 a week. Loss of earnings at the time of the trial was $14,000.00; medical and hospital expenses amounted to $4,505.56. Taking into account his age, occupation, lost earnings, medical expenses, present value of his future loss of earnings, his reasonable life expectancy, and the nature of his injuries, my finding is that an award of $60,000.00 would be proper.

Judgment may therefore be entered in favor of Niels K. Wibye for the sum of $60,000.00; and in favor of Harold Wibye for $45,000.00, upon findings of fact and conclusions of law to be presented in accordance with the Rules.